**Truman H. THOMAS, Jr.**

v.

**Robert TANSEY, Acting Warden, Montgomery County Detention Center.**

**Civ. No. 72–720–H.**

United States District Court,  
D. Maryland.

Dec. 14, 1972.

Gary H. Simpson, Chevy Chase, Md., for petitioner.

Joseph E. Rosenblatt, Asst. Atty. Gen., Baltimore, Md., and Stephen Johnson, Asst. County Atty., Rockville, Md., for respondent.

## MEMORANDUM AND ORDER

HARVEY, District Judge.

Through private counsel, Truman H. Thomas, Jr., petitioner, has filed an application in this Court seeking the issuance of a writ of habeas corpus. On April 21, 1972, petitioner appeared before Judge Joseph M. Mathias in the Circuit Court for Montgomery County in a civil paternity matter. State of Maryland v. Thomas, Paternity Nos. 309 and 438. Petitioner was not represented by counsel on that occasion. After hearing testimony from Thomas and other witnesses, Judge Mathias found petitioner to be in contempt of Court for failure to make support payments previously ordered.[1] Judge Mathias directed that petitioner be confined in the Montgom-

---

1. The State Court had on a previous occasion found that petitioner had fathered two children by the same mother.

ery County Detention Center for the period of one year or until such time as he might purge himself of contempt by the payment of arrearages in the amount of $2,831.00.[2]

Thomas then filed a petition for a writ of habeas corpus in the Circuit Court for Montgomery County. On July 5, 1972, such petition was denied. The pending application was filed in this Court on July 14, 1972, at which time petitioner was in confinement under the sentence imposed by Judge Mathias. An order to show cause was directed to the Attorney General of the State of Maryland, who thereafter advised this Court that there was some question whether the State Attorney General or the County Attorney for Montgomery County should represent the Warden of the Montgomery County Detention Center in this action.[3] As this question was not immediately resolved, it was decided that the Attorney General should in any event appear as *amicus curiae*. Accordingly, an answer together with the transcript of the proceedings before Judge Mathias on April 21, 1972 was filed in this Court on September 13, 1972.

Meanwhile, petitioner had filed in the Circuit Court for Montgomery County a motion for modification of the State Court's contempt order or for bail. Counsel for petitioner advised this Court by letter that he had agreed with counsel for the State and for Montgomery County that this pending federal action would be mooted if petitioner was released unconditionally by the State Court. A hearing was held on September 8, 1972 before Judge Mathias who denied both motions. Thereafter, Judge Mathias apparently reconsidered such action and on September 25, 1972 entered an Order finding that petitioner had reduced his arrearages from $2,831.00 to $1,771.00 and providing that peti-

tioner be deemed to have purged himself of the contempt of which he had been found guilty on April 21, 1972. Pursuant to such Order, petitioner was released from confinement and was directed to pay certain sums per week as support in the two paternity actions.[4]

In the pending petition, Thomas claims that his constitutional rights have been infringed in that (1) he was not advised of his right to counsel at the original contempt hearing; (2) he was indigent at the time of such hearing and no attorney was appointed to represent him; and (3) he was not advised of his right to a trial by jury and was denied a jury trial. As relief, petitioner has requested that an order be entered discharging him from custody.

The pending petition presents several interesting constitutional questions relating to the confinement of an individual for being in contempt of court. However, before this Court reaches the constitutional issues involved here, a threshold question of some importance is presented by the facts of this case, namely, whether the case is now moot because petitioner has now been purged of contempt and is no longer confined under an order of the state court. A conference was held with counsel on November 16, 1972, and it was agreed that memoranda would be filed on the issue of mootness and that the Court would decide this question before requiring further briefs or a hearing on the constitutional issues.

At the outset, it should be noted that whether this Court has jurisdiction of this case and whether the case is now mooted are two distinctly different questions. This distinction was clearly indicated in Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The Supreme Court there overruled Parker v. Ellis, 362 U.S. 574, 80

---

2. Petitioner was confined under a Work Release Program which permitted him to work during the day and return to the Detention Center every evening.

3. By Order dated November 7, 1972, Robert Tansey, the Acting Warden, was sub-

stituted as respondent for John Ford, the Warden, as the latter's term of office had expired.

4. Petitioner is now claiming that such release was not unconditional.

S.Ct. 909, 4 L.Ed.2d 963 (1960), and held that once federal jurisdiction has attached in the District Court in a habeas corpus case, it is not defeated by the release of the petitioner prior to the completion of proceedings on his application. 391 U.S. at 238, 88 S.Ct. 1556. This Court would therefore clearly appear to have jurisdiction of the pending case since petitioner was indeed in custody on July 14, 1972 when he filed the within application.

However, the *Carafas* case also involved the question of mootness. As to that issue, the Supreme Court said the following (at pages 237–238, 88 S.Ct. at page 1559):

> "It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these 'disabilities or burdens [which] may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' Fiswick v. United States, 329 U.S. 211, 222 [67 S.Ct. 224, 230, 91 L.Ed. 196] (1946). On account of these 'collateral consequences,' the case is not moot. Ginsberg v. New York, 390 U.S. 629, 633–634, n. 2 [88 S.Ct. 1274, 1277–1278, 20 L.Ed.2d 195] (1968); Fiswick v. United States, *supra*, [329 U.S. 211] at 222, n. 10 [67 S.Ct. 224, at 230]; United States v. Morgan, 346 U.S. 502, 512–513 [74 S.Ct. 247, 253, 98 L.Ed. 248] (1954)." [5]

■ When these considerations are applied here, it would appear that none of the civil disabilities or burdens mentioned, nor any similar thereto, are now being suffered by Thomas. Petitioner was not convicted of a crime, but was merely found guilty of civil contempt of court. He has been released from deten-

tion and has no criminal conviction on his record. Indeed, there was not even a criminal case brought against him, the two paternity actions in the State Court having been civil equity matters. Petitioner has now been purged of contempt although he has been required to make further support payments by the State Court. Furthermore, it is not clear what relief petitioner is now seeking. He has not amended his petition which seeks solely his release from confinement. If petitioner requested the right to amend his petition, he would presumably be asking this Court to do no more than set aside the State Court Order of April 21, 1972 finding him in contempt or the Order of September 25, 1972 requiring future support payments.

Under these circumstances, this Court concludes that petitioner is not suffering from disabilities or burdens which would require the intervention by this Court, by way of habeas corpus relief, in civil proceedings pending in a State Court. As there are no collateral consequences other than ordinary civil ones resulting from the State Court's actions of April 21, or of September 25, 1972, this Court concludes that this case is moot. See United States v. Bohling, 399 F.2d 305, 306 (6th Cir. 1968); Wade v. Carsley, 433 F.2d 68, 70 (5th Cir. 1970).

■ Petitioner's reliance on United States v. Kreuger, 301 F.Supp. 1123 (E.D.N.Y.1969) is misplaced. Petitioner argues that that case also involved incarceration because of a finding that petitioner was in civil contempt. The opinion itself indicates otherwise and states that the petitioner there had been found to be "in criminal contempt" of court on March 7, 1969 and again on May 23, 1969. 301 F.Supp. at 1124. In any event, the Court in that case did not distinguish between the questions of jurisdiction and mootness. The Court there indicated that the petition was not moot because the petitioner "was in state custody" on the date when the application was filed. 301 F.Supp. at

---

5. Footnotes in the original of this quotation have been omitted.

1125. Such a consideration relates to jurisdiction rather than mootness. There was no discussion in the *Kreuger* case of collateral consequences that would be suffered by the petitioner in that case. Under *Carafas,* if a petitioner has fully satisfied his sentence, his habeas corpus petition is moot if no collateral legal consequences will be imposed because of his challenged conviction. See Sibron v. New York, 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

Nor is Bates v. Bates, 141 F.2d 723 (D.C.Cir.1944), cited by petitioner, in point. The husband in that case had not been purged of contempt and finally released from confinement at the time the decision was rendered. He was out on bail pending determination of the question whether under the District of Columbia Code he could be imprisoned for failing to make maintenance payments to his wife as required by an order of court. The Court found him to be "unquestionably restrained of his liberty" under such circumstances. 141 F.2d at 724.

Petitioner argues that he is subject to collateral legal consequences because he is still within the jurisdiction of the Circuit Court for Montgomery County and is required to make periodic payments to the Court under its Order of September 25, 1972. But such Order hardly imposes on petitioner disabilities or burdens similar to those that flow from a conviction. The Order is similar to any judgment entered in a civil case, except that if petitioner does not make the payments as required, the State Court within the exercise of its equitable powers could again find him in civil contempt of court and punish him appropriately. It would be mere conjecture for this Court to assume that at any future contempt hearing petitioner would not be represented by counsel and would be imprisoned rather than fined. If in any future State Court proceeding petitioner's constitutional rights are denied and he is thereby incarcerated, he would then be entitled to apply to this Court for habeas corpus relief, after of course exhausting all available state remedies.

For the reasons stated, it is this 14th day of December, 1972, by the United States District Court for the District of Maryland,

Ordered that the petition for a writ of habeas corpus be and the same is hereby denied.